IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

DANIEL FAAITA,                    )    CIVIL NO. 07-00601 LEK
                                  )
          Plaintiff,              )
                                  )
     vs.                          )
                                  )
SUSAN L. LIANG, ETC., ET AL.,     )
                                  )
          Defendants.             )
_____  )


## ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

          Before the Court are (1) Defendants City and County of
Honolulu ("City") and Honolulu Police Department's[1] Motion for
Summary Judgment ("City's Motion"), filed on January 30, 2009;
(2) Defendants Peter Carlisle, Ryan K. Shinsato, Ululani G.
Akiona and Wade H. Hargrove's (collectively, "Prosecutors")
Motion for Summary Judgment ("Prosecutors' Motion"), filed on
January 30, 2009; and (3) Defendants Greyson Acisoba,
Morgan Hill, Michael Kaya, Maxie Navas, Russell D. Ontiveros,
Samuel Valmoja, Shane Wright, Sean Yamashita, Neil Han and
Bryan Oato's (collectively, "HPD Officers") Motion for Summary
Judgment ("HPD Defts.' Motion"), filed on January 30, 2009
(collectively, "Motions").  Plaintiff Daniel Faaita ("Plaintiff")
filed his memoranda in opposition to the Motions on April 17,

_____

          [1] Defendant Honolulu Police Department was dismissed from
this action without prejudice by way of stipulation filed on May
13, 2009.

2009.

The Court finds this matter suitable for disposition
without a hearing pursuant to Rule LR7.2(d) of the Local Rules of
Practice of the United States District Court for the District of
Hawaii ("Local Rules").  After careful consideration of the
Motions, supporting and opposing memoranda, and the relevant
legal authority, Defendants' Motions are HEREBY GRANTED for the
reasons set forth below.

## BACKGROUND

**I.   Injunction Order Violations**

   **A.   HPD Officers' Actions**

On December 22, 2003, Plaintiff stipulated to an Order
granting Petition for Injunction Against Harassment, without any
findings of facts, in favor of Defendant Susan Liang ("Liang") in
Civil No. 1SS03-1-001795, District Court of the First District,
State of Hawaii ("Injunction Order").  [HPD Defts.' Separate and
Concise Statement of Facts in Supp. of Motion for Summary
Judgment ("HPD Defts.' CSOF"), Exh. B to Decl. of Scott Dodd.]
The Injunction Order, among other things, restrained and enjoined
Plaintiff from contacting, threatening or harassing Liang for a
period of three years from the date of the order.  [Id.]

Later that same day, HPD Defendant Officer Neil Han
("Han") responded to a call concerning an alleged violation of
the Injunction Order. [Id., Decl. of Neil Han ¶ 4.]  Han met with
Liang, who informed him that Plaintiff had violated the

Injunction Order by calling her four separate times at her place of business, the Big Surf Hotel ("December 22 Incident"). [Id. ¶¶ 5-7.] Liang further informed Han that she was able to identify Plaintiff's voice on the telephone and that she did not give him permission to call her. [Id. ¶¶ 7-8.] Liang provided a written statement regarding Plaintiff's calls to her and also provided a cassette tape that she stated contained a recording of the harassing conversation she had with Plaintiff. [Id. ¶¶ 8-9; Pltf.'s Opp. Exhs., Exh. 6 to Decl. of John Remis ("Remis Decl.").] Han recovered the cassette tape from Liang and submitted the tape into evidence. [HPD Defts.' CSOF, Decl. of Neil Han ¶ 9.]

On January 2, 2004, HPD Defendant Morgan Hill ("Hill") received copies of reports prepared by Han of the December 22 Incident. [Id., Decl. of Morgan Hill ("Hill Decl.") ¶ 4.] Hill reviewed the reports and the Injunction Order and determined that all of the elements of each violation of Hawaii Revised Statute § 604-10.5 were met and that it was appropriate to arrest Plaintiff for violating the Injunction Order.[2] [Id. ¶¶ 4-5.] Hill contacted Plaintiff by telephone and requested that he turn himself in at the Kalihi Police Station for arrest for the four violations of the Injunction Order. [Id. ¶ 5.] Plaintiff agreed and was placed under arrest without incident later that same day (the "January 2 Arrest").

---

[2] Section 604-10.5 provides criminal liability for a knowing or intentional violation of an injunction or restraining order against harassment. Haw. Rev. Stat. § 604-10.5.

[<u>Id.</u> ¶ 6.]  Plaintiff was provided his constitutional warnings and offered an opportunity to make a statement, which he declined.  [<u>Id.</u>] Hill apprised his Sergeant, L. Kitano, of the facts and circumstances of the arrest.  [<u>Id.</u>]

On March 14, 2004, HPD Defendant Officer Michael Kaya ("Kaya") responded to a call concerning another alleged violation of the Injunction Order.  [<u>Id.</u>, Decl. of Michael Kaya ("Kaya Decl.") ¶ 4.]  Liang informed Kaya that Plaintiff had called her at her place of business earlier that day in violation of the Injunction Order ("March 14 Incident").  [<u>Id.</u> ¶ 5.]  Liang further informed Kaya that she recognized Plaintiff by his voice and that she did not give him permission to call her.  [<u>Id.</u> ¶ 6.]  Liang provided a written statement detailing Plaintiff's call and also indicated she had initiated a call trace via Verizon *57.  [<u>Id.</u>, Pltf.'s Opp. Exhs., Exh. 10 to Remis Decl.]  Kaya reviewed the Injunction Order and determined that it appeared to valid and in effect at the time Plaintiff allegedly made the call.  [HPD Defts.' CSOF, Kaya Decl. ¶ 5.]

On March 31, 2004, Hill received a copy of the report prepared by Kaya of the March 14 Incident.  [<u>Id.</u>, Hill Decl. ¶ 7.]  Hill reviewed the report, including Liang's statement, and the Injunction Order and determined that all of the elements of a violation of Hawaii Revised Statute § 604-10.5 were met.  [<u>Id.</u> ¶¶ 7-8.]  Hill contacted Plaintiff by telephone and requested that he turn himself in at the Kalihi Police Station for arrest for violation of the Injunction Order.  [<u>Id.</u> ¶ 8.]  Plaintiff agreed and was placed under arrest without incident later that same day (the "March 31

Arrest"). [Id. ¶ 9.] Plaintiff was provided his constitutional warnings and offered an opportunity to make a statement, which he declined. [Id.] Hill apprised his Sergeant, C. Yamashiro ("Yamashiro"), of the facts and circumstances of the arrest. [Id.]

On April 8, 2004, HPD Defendant Officer Greyson Alcosiba ("Alcosiba") responded to another alleged violation of the Injunction Order. [Id., Decl. of Greyson Alcosiba ("Alcosiba Decl.") ¶ 4.] Liang informed Alcosiba that her sister, Defendant Maxine Shea ("Shea"), received a call from Plaintiff requesting to speak with Liang ("April 8 Incident"). [Id.] Shea recorded the call based on her recognition of Plaintiff's voice, even though the caller identified himself as "Mark Johnson." [Id. ¶ 5.] Liang informed Alcosiba that Plaintiff had used the name "Mark Johnson" in the past but that both her and her sister recognized the voice as that of Plaintiff. [Id.] Liang further informed Alcosiba that she had made several prior police reports against Plaintiff for similar conduct and also provided a written statement detailing the alleged violation. [Id.] Alcosiba reviewed a copy of the Injunction Order provided by Liang and believed that Plaintiff had violated the order. [Id. ¶ 6.] Alcosiba also recovered a cassette tape from Liang, that she indicated contained a recording of the call made by Plaintiff earlier that day, and submitted such tape into evidence. [Id.]

On April 10, 2004, HPD Defendant Officer Bryan Oato ("Oato") received a copy of the report prepared by Alcosiba of the April 8 Incident. [Errata Re: HPD Defts.' CSOF, Decl. of Bryan Oato ¶ 5.] Oato reviewed the report, including Liang's statement, and the Injunction Order and determined that all of

the elements of a violation of Hawaii Revised Statute § 604-10.5 were met. [Id. ¶¶ 5-6.] Later that same day, Plaintiff turned himself in at the Kalihi Police Station and was placed under arrest for violation of the Injunction Order relating to the April 8 Incident (the "April 10 Arrest"). [Id. ¶ 7.] Oato apprised his Sergeant, Russell Ontiveros, of the facts and circumstances of the arrest. [Id. ¶ 8.]

On April 13, 2004, Alcosiba responded to another alleged violation of the Injunction Order. [HPD Defts.' CSOF, Alcosiba Decl. ¶ 7.] Liang informed Alcosiba that her sister Shea received a call from Plaintiff requesting to speak with Liang ("April 13 Incident"). [Id.] Shea recorded the call even though the caller again identified himself as "Mark Johnson," as Plaintiff had used such alias in previous calls. [Id. ¶ 8.] Liang informed Alcosiba that she listened to the recording and recognized Plaintiff's voice. [Id.] Shea confirmed to Alcosiba that she answered the call and recognized Plaintiff's voice and began to record the call. [Id. ¶ 9.] Both Liang and Shea provided written statements in support of their allegations that Plaintiff called Liang. [Id.] Alcosiba reviewed a copy of the Injunction Order provided by Liang and believed that Plaintiff had violated the order. [Id. ¶ 10.] Alcosiba also recovered a tape recording of the call and submitted the tape into evidence. [Pltf.'s Opp. Exhs., Exh. 15 to Remis Decl.]

On April 25, 2004, HPD Defendant Maxie Navas ("Navas") responded to another alleged violation of the Injunction Order. [HPD Defts.' CSOF, Decl. of Maxie Navas ¶ 4.] Liang informed Navas that Plaintiff called her at work ("April 25 Incident"). [Id.]

Liang indicated that she recognized Plaintiff's voice as he had stayed at the Big Surf Hotel several times in the past.  [Id. ¶ 5.]  Liang provided Navas with a copy of the Injunction Order, which Navas reviewed.  [Id.]  Navas believed that all of the elements of a violation of the Injunction Order were present.  [Id. ¶ 6.]  Later that same day, Navas was informed that Liang had called HPD and stated that Plaintiff had called her place of work again requesting to speak with her.  [Id. ¶ 7.]  Navas initiated another violation of the Injunction Order against Plaintiff based on that information.  [Id. ¶ 8.]

        On April 27, 2004, HPD Defendant Samuel Valmoja ("Valmoja") was instructed by Sgt. Yamashiro to conduct an investigation into violations of the Injunction Order by Plaintiff.  [Id., Decl. of Samuel Valmoja ¶ 4.]  Yamashiro informed Valmoja that Plaintiff wanted to turn himself in for said violations.  [Id.]  Valmoja reviewed reports prepared by Alcosiba and Navas, and the statements made therein, regarding the April 13 Incident and the April 25 Incident.  [Id. ¶¶ 5-6.]  Valmoja also reviewed the Injunction Order and noted that it was effective for three years from the date of December 22, 2003.  [Id. ¶ 5.]  After reviewing the reports, Valmoja placed Plaintiff under arrest for three offenses constituting violations of Hawaii Revised Statutes section 604-10.5 (the "April 27 Arrest").  [Id. ¶ 7.]  Valmoja apprised Sgt. Yamashiro of the facts and circumstances of the arrest.  [Id.]  Plaintiff was also arrested for an outstanding contempt warrant order.  [Id.]  Valmoja also executed an Affidavit in Support of Warrantless Search in support of an application for judicial determination of probable

cause. [Pltf.'s Opp. Exhs., Exh. 18 to Remis Decl.] Thereafter, the District Court of the First Circuit, Honolulu Division issued a Judicial Determination of Probable Cause for the Extended Restraint of Liberty of Warrantless Arrestee with respect to Plaintiff. [HPD Defts.' CSOF, Exh. C to Dodd Decl.]

On November 4, 2004, Navas responded to another alleged violation of the Injunction Order. [Pltf.'s Opp. Exhs., Exh. 28 to Remis Decl.] Liang informed Navas that she had received a call from a male she believed to be Plaintiff ("November 4 Incident"). [Id.] Liang advised Navas that she had a restraining order on Plaintiff that prohibited him from contacting her, including calling her at work. [Id.] Liang provided a written statement of the alleged violation and indicated she had made a recording of the call. [Id.] Liang also indicated that she had made a tape of the call but did not offer the tape to Navas as evidence. [Id.]

On November 7, 2004, HPD Defendant Sean Yamashita ("Yamashita") responded to another alleged violation of the Injunction Order. [HPD Defts.' CSOF, Decl. of Sean Yamashita ¶ 4.] Liang informed Yamashita that she had earlier been contacted by her clerk, Mary Date ("Date"), who stated that a male named Daniel Faaita called the Big Surf Hotel on two separate occasions requesting to speak with Liang ("November 7 Incident"). [Id.] Yamashita interviewed Date who informed him that she recognized Plaintiff's voice when he called and that Plaintiff apparently

believed he was talking to Liang and made numerous sexual
comments during the telephone conversation.  [<u>Id.</u> ¶ 5.]  Yamashita
reviewed the Injunction Order and believed that all of the elements of
a violation of Hawaii revised Statutes section 604-10.5 were present.
[<u>Id.</u> ¶ 6.]

On November 18, December 16 and December 17, 2004, various
police officers responded to further alleged violations of the
Injunction Order.  [Pltf.'s Opp. Exhs., Exhs. 33, 35a, 36 to Remis
Decl.]  Liang, and in some instances Date, informed the officers that
Plaintiff called Liang's work place in violation of the Injunction
Order.  [<u>Id.</u>]  Liang provided written statements to the investigating
officers detailing the alleged violations that occurred on December 16
and 17, 2009.  [<u>Id.</u>, Exhs. 35a, 36.]

B.    **Prosecutors' Actions**

On April 16, 2004, Deputy Prosecuting Attorney
Mary Loeb ("Loeb") filed Criminal Complaint Cr. No. 04-1-0731
against Plaintiff.  [Pltf.'s Opp. Exhs., Exh. 9 to Remis Decl.]
The complaint charged Plaintiff with four counts of violating the
Injunction Order in connection with the December 22 Incident.
[<u>Id.</u>]

Sometime thereafter, Plaintiff's criminal case was
transferred from Loeb to Defendant Deputy Prosecuting Attorney
Ululani Akiona ("Akiona").  [Prosec. Defts.' CSOF, Decl. Of
Ululani Akiona ("Akiona Decl.") ¶ 5.]  Akiona reviewed CR. No.
04-1-0731, the police reports and witness statements and
determined there was sufficient evidence to prove every element

of each of the four counts of violating the Injunction Order.
[Id. ¶ 6.]  During the time Akiona was handling the first
criminal complaint against Plaintiff, police reports related to
the April 13 Incident and the April 25 Incident were brought to
her attention indicating Plaintiff had committed further
violations of the Injunction Order.  [Id. ¶ 7.]  Akiona reviewed
the police reports, witness statements and the Injunction Order
and determined that there was sufficient evidence to prove three
additional counts of violating the Injunction Order.  [Id. ¶ 6.]
On May 5, 2004, Akiona filed Criminal Complaint Cr. No. 04-1-0885
against Plaintiff charging him with three counts of violating the
Injunction Order.  [Pltf.'s Opp. Exhs., Exh. 20 to Remis Decl.]

        On May 5, 2004, Plaintiff's defense counsel requested
that Akiona provide copies of the tape recordings made by
Defendants Liang and Shea of the alleged Injunction Order
violations and for any trace records of the calls made to Liang's
work place, pursuant to Rule 16.  [Id., Exh. 21 to Remis Decl.]
In response, Akiona indicated that she would make available any
tape recordings submitted into evidence and that a subpoena for
trace records had been sent to Verizon Legal Compliance center
for the alleged calls made by Plaintiff on April 13 and 25, 2004.
[Id., Exh. 22 to Remis Decl.]  On June 4, 2004, the Prosecutor's
office was advised that telephone number (808) 218-2193 (the
"Traced Call Number") was serviced by T-Mobile USA for the dates
April 13 thru 25, 2009.  [Id., Exh. 23 to Remis Decl.]

By letter dated June 12, 2004, Plaintiff's counsel sent Akiona a letter indicating that Plaintiff did not have a telephone account under the Traced Call Number.  [Id., Exh. 24 to Remis Decl.]  Plaintiff's counsel further indicated that it had reviewed the tape recorded calls produced by Akiona's office and stated that his Plaintiff "unequivocally" denies that his voice is on those tapes.  [Id.]  Plaintiff's counsel further offered to provide a sample of his client's voice prints for comparison. [Id.]

On June 22, 2004, T-Mobile, pursuant to subpoena from the Prosecutor's office, provided information indicating that the subscriber name for the Traced Call Number was Todd D. Evans. [Id., Exh. 25 to Remis Decl.]  T-Mobile also provided telephone call records indicating that calls were made from the Traced Call Number to Liang's work place (Big Surf Resort Hotel) number on April 13 and 25, 2009.  [Id., Exh. 26 to Remis Decl.]  On July 27, 2004, Plaintiff's counsel, pursuant to Rule 16, requested Akiona to provide any information concerning Todd D. Evans.  [Id., Exh. 27 to Remis Decl.]  Plaintiff's counsel further requested information on any efforts undertaken on behalf of the Prosecutors or HPD on any investigation of Todd D. Evans concerning Plaintiff's criminal matter.  [Id.]

After initiating Cr. No. 04-1-0885, Akiona was apprised of additional police reports indicating that Plaintiff had committed further violations of the Injunction Order.  [Prosec.

Defts.' CSOF, Akiona Decl. ¶ 10.]  Akiona reviewed the police
reports, witness statements and the Injunction Order and
determined that there was sufficient evidence to prove two
additional counts of violating the Injunction Order, and two
counts of Criminal Contempt of Court in violation of Hawaii
Revised Statutes section 710-1077.  [<u>Id.</u> ¶ 11.]  On August 18,
2004, Akiona filed Criminal Complaint Cr. No. 04-1-1623 against
Plaintiff charging him with two counts of violating the
Injunction Order in connection with the April 8 Incident and two
counts of criminal contempt of court.  [Pltf.'s Opp. Exhs., Exh.
14 to Remis Decl.]

        Sometime after filing Cr. No. 04-1-1623, Akiona was
transferred to another department and Plaintiff's criminal case
was assigned to Defendant Deputy Prosecuting Attorney Ryan
Shinsato ("Shinsato").  [Prosec. Defts.' CSOF, Decl. Of Ryan
Shinsato ¶ 4.]  Shinsato reviewed the criminal complaints, police
reports, witness statements, Injunction Order and the Judicial
Determination of Probable Cause and determined there was
sufficient evidence to prove every element of each count of
violating the Injunction Order and Contempt of Court.  [<u>Id.</u> ¶ 6.]

        At some time between November 29, 2004 and January 24,
2005, Plaintiff's criminal matters were assigned to Defendant
Deputy Prosecuting Attorney Wade Hargrove III ("Hargrove").
[<u>Id.</u>, Decl. of Wade Hargrove III ("Hargrove Decl.") ¶ 4.]  In
preparation for the January 24, 2005 calendar call and trial

setting of Plaintiff's criminal complaints, Hargrove concluded
that there was sufficient evidence to prove every element of each
of the counts contained in Cr. Nos. 04-1-0731, 04-1-0885, and 04-
1-1623. [Id. ¶ 7.]  On April 7, 2005, Hargrove filed Criminal
Complaint Cr. No. 05-1-0684, charging Plaintiff with eight
additional counts of violating the Injunction Order; three counts
were based on the November 4 incident and the November 7 Incident
and the remaining five counts were based on other additional
outstanding police reports.  [Pltf.'s Opp. Exhs., Exh. 38 to
Remis Decl.]  Hargrove was transferred to another division and
Plaintiff's criminal case was assigned to Deputy Prosecuting
Attorney Kristine Yoo ("Yoo").  [Prosec. Defts.' CSOF, Hargrove
Decl. ¶ 15.]

On June 27, 2005, a hearing in the Circuit Court of the
First Circuit, State of Hawaii was held regarding the pending
criminal charges against Plaintiff.  [Id., Exh. 42 to Remis
Decl.]  Yoo indicated to the circuit court judge that after
further investigation the state did not believe that it had a
good faith basis to move forward with the prosecution of Cr. Nos.
04-1-0731, 04-1-0885, 04-1-1623 and 05-1-0684.  [Id.]  The court
then dismissed all of the charges against Plaintiff with
prejudice.  [Id.]

## II.  **Complaint**

On December 12, 2007, Plaintiff filed his complaint in
the instant action ("Complaint") pursuant to 42 U.S.C. § 1983.

Plaintiff alleges that Defendants' actions related to the investigation, arrest and prosecution of the alleged violations of the Injunction Order violated his constitutional rights under the Fourth Amendment and Fourteenth Amendment to the United States Constitution.  Under the First Cause of Action (Due Process Violation - 14th Amendment), Plaintiff alleges that the Prosecutors had a duty to introduce all evidence to aid the court in ascertaining the truth about the Plaintiff's criminal matter. [Compl. ¶ 58.]  The Prosecutors failed in such duty when they failed to exercise their sound discretion upon notice by Plaintiff's counsel of the investigative deficiencies concerning Plaintiff's case.  [Id. ¶ 58.]  Under the Second Cause of Action (Unreasonable Search and Seizure - 4th and 14th Amendments), Plaintiff alleges that the HPD Officers intentionally and maliciously violated Plaintiff's right to be secure against unreasonable search and seizure.  [Id. ¶¶ 61-62.]  Under the Third Cause of Action, Plaintiff alleges that he was falsely imprisoned in violation of his rights, privileges and immunities secured to him by the Fourth and Fourteenth Amendments.  [Id. ¶¶ 65-66.]  Plaintiff also alleges causes of action for emotional distress (Fourth), defamation (Fifth), gross negligence (Sixth) and intentional tort (Seventh).

## III. __Defendants' Motions__

### A.   __HPD Officers' Motion__

In their Motion, HPD Officers contend that they are

entitled to summary judgment on the basis that probable cause existed for Plaintiff's arrests on charges that he violated the Injunction Order.[3]  Probable cause exists when police officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested.  In each instance, the HPD Officers were provided with a valid court order prohibiting Plaintiff from contacting or otherwise harassing Liang and reasonably trustworthy information that Plaintiff had in fact violated such order.  Therefore, the HPD Officers had probable cause to arrest Plaintiff on four separate occasions for violating Hawaii Revised Statutes § 604-10.5.

Alternatively, the HPD Officers argue that they are entitled to qualified immunity from Plaintiff's claims. Qualified immunity protects arresting officers from suit for damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  The question of qualified immunity differs from the question of probable cause in that it may be objectively reasonable for an officer to believe that probable cause existed, even in the absence of such a finding.

---

[3] The HPD Officers seek summary judgment on Causes of Action II - VII of the Complaint.  [Mem. in Supp. of HPD Defts.' Motion at 3.] Although, the HPD Officers do not specifically seek summary judgment on Cause of Action I (14th Amendment - Due Process Violation), the Court will nevertheless consider their arguments in the context of all the causes of action asserted in the Complaint.

Thus, even if the arresting officer was mistaken that probable
cause existed, they are still immune from liability to the extent
such mistake was reasonable.  In this case, HPD Officers contend
that even if probable cause for Plaintiff's arrest is found to
have been lacking, the arrests were reasonably based on
information that indicated Plaintiff had violated the Injunction
Order.  Thus, the HPD Officers could have reasonably believed
that their conduct did not violate Plaintiff's clearly
established constitutional rights.

        Finally, the HPD Officers argue that they are entitled
to summary judgment on Plaintiff's state law claims.  The HPD
Officers first note that to the extent the § 1983 claims are
dismissed, the federal court has the discretion to dismiss
accompanying state law claims.  In any event, HPD Officers
contend that they are entitled to the defense of conditional
privilege against the state law claims.  Under Hawaii law, non-
judicial governmental employees enjoy such protection when acting
in the performance of their official duty.  In order to overcome
such privilege, a plaintiff must demonstrate by clear and
convincing proof that the official was motivated by malice and
not an otherwise proper purpose.  The HPD Officers argue that the
evidence in this case indicates that they showed no such malice
in arresting and charging Plaintiff for violations of the
Injunction Order.

        In his opposition, Plaintiff contends that the HPD

Officers lacked probable cause in arresting him for violations of
the Injunction Order.  Plaintiff first points to the statement of
Yoo to the circuit court judge, at a hearing on Plaintiff's
criminal matters, that after further investigation the state did
not believe that it had a good faith basis to move forward with
the prosecution of Cr. Nos. 04-1-0731, 04-1-0885, 04-1-1623 and
05-1-0684.  Plaintiff argues that Yoo's statement is a judicial
admission firmly establishing that probable cause for his arrests
was lacking.  In addition, the HPD Officers failed to follow
their own investigative procedures indicating a lack of the
requisite probable cause.  At a minimum, the HPD Officers should
have listened to the tape recordings to verify the content and
the caller's voice, ask Liang if she traced the calls, contacted
the tracing authority and obtain information on the alleged
calls, and asked Liang if she knew any other suspects.  Instead,
Plaintiff argues that the HPD Officers improperly relied on
Liang's sole statements that Plaintiff was the person making
harassing phone calls to her.

        Plaintiff also argues that the HPD Officers are not
entitled to qualified immunity.  Plaintiff points to multiple
instances where the HPD Officers failed to listen to tape
recordings made by Liang and Shea of the calls allegedly made by
Plaintiff, failed to follow-up or further investigate alleged
calls traced by Liang, failed to recover the tape recordings in
some instances, and then solely relied on Liang's statements to

arrest Plaintiff for violations of the Injunction Order.
Plaintiff asserts that such conduct demonstrates that the HPD
Officers did not exercise reasonable professional judgment and
that they could not have believed that such conduct was lawful
with respect to his constitutional rights.

### B.  **Prosecutors' Motion**

In their Motion, the Prosecutors first argue that there
was probable cause to arrest and charge Plaintiff with violating
the Injunction Order.[4]  Because probable cause existed, there was
no constitutional violation and Plaintiff's § 1983 claims fail.

The Prosecutors next argue that in any event, they are
entitled to absolute immunity for their actions in connection
with Plaintiff's criminal matter.  A state prosecutor is entitled
to absolute immunity from liability under § 1983 for violating an
individual's federal constitutional rights when he or she engages
in "activities intimately associated with the judicial phase of
the criminal process."  The Prosecutors argue that they were
engaged in actions associated with the prosecution of Plaintiff's
criminal matter, including initiating judicial proceedings
against him, that are afforded absolute immunity.

The Prosecutors also dispute Plaintiff's contention

_____

[4]   The Prosecutors seek summary judgment on Causes of Action
I - VI of the Complaint.  [Mem. in Supp. of Prosec. Defts.'
Motion at 3.] Although, the Prosecutors do not specifically seek
summary judgment as to Cause of Action VII (Intentional Tort),
the Court will nevertheless consider their arguments in the
context of all the causes of action asserted in the Complaint.

that they are not entitled to absolute immunity because they were
acting as investigators and did not properly investigate
Plaintiff's case.  The Prosecutors note that the law does not
require the prosecution to conduct the defendant's investigation
or assist in the presentation of the defense's case.  Moreover,
Plaintiff fails to show that the information he allegedly needed
to be investigated was not available to him through due diligence
and his own investigation.

Alternatively, the Prosecutors argue they are entitled
to qualified immunity.  Government officials are granted
qualified immunity and are shielded from liability for civil
damages in performing discretionary functions as long as their
conduct does not violate clearly established statutory or
constitutional rights of which a reasonable person would have
known.  The Prosecutors argue that their conduct relating to
Plaintiff's criminal matter, i.e., reviewing the file, police
reports and witness statements in connection with the alleged
violations of the Injunction Order, did not violate any of
Plaintiff's constitutional rights, and, therefore summary
judgment should be granted in their favor.

In opposition, Plaintiff argues that probable cause
was lacking for his arrests based on charges he violated the
Injunction Order.  Plaintiff, as in his opposition to the HPD
Defts.' Motion, contends that Yoo's statement before the circuit
court judge is a binding judicial admission that demonstrates

probable cause did not exist in connection with his arrests for violating the Injunction Order.  Therefore, the Prosecutors are not entitled to summary judgment on that basis.

Plaintiff also contends that the Prosecutors are not entitled to absolute or qualified immunity because they failed in their duty to investigate the charges against Plaintiff made in the various police reports.  Plaintiff argues that the Prosecutors were not permitted to rely solely on those reports. Instead, they had a duty to listen to the taped calls, inquire about call traces and further investigate the charges made by the HPD Officers.  Plaintiff asserts that the Prosecutors improperly "rubber stamped" the inadequate investigations made by the HPD Officers resulting in a violation of Plaintiff's constitutional rights.

C.   **City's Motion**

In their Motion, the City argues that Plaintiff has no evidence supporting § 1983 claims against it.  The City asserts that a municipality can only be held liable under § 1983 for an unconstitutional act of its police officer when such act was the direct result of inadequate police training or supervision. Also, the plaintiff must show that the municipality acted with "deliberate indifference."  In this case, the only evidence Plaintiff can adduce is his own conclusory testimony that he was arrested without probable cause or that the HPD Officers did not adequately investigate the charges made against him.  Such

evidence is insufficient to sustain a showing of deliberate indifference on the part of the City.

The Plaintiff must also show that the municipality had a policy and that such policy was the moving force behind the constitutional violation.  There is no evidence that the City or HPD was aware of, condoned, instituted or allowed to be instituted a pattern of failing to properly train, supervise and discipline its police officers in regards to the Fourth Amendment.  In fact, the evidence shows that the City and HPD has a rigorous training program instructing police recruits on the law of arrests and that arrests must comply with the United States Constitution, including the Fourth Amendment.  [Mem. in Supp. of City's Motion at 11 (citing to City's CSOF, Decl. of Kevin Katamoto).]  The City further argues that, in any event, the actions of the HPD Officers were reasonable and thus no constitutional violation occurred.

Finally, the City argues that it cannot be held liable for the negligent acts of its employees, pursuant to Plaintiff's state law claims, when the employees themselves are immune from liability.  Since none of the Prosecutors or HPD Defendants committed a tort against Plaintiff, or are at the very least immune from liability based on absolute immunity, qualified immunity, or conditional privilege, then neither can the City be liable.

In his opposition, Plaintiff states that he does not

allege the HPD Officers received no training at all but that the training they did receive was inadequate. Plaintiff argues that failure by the HPD Officers to follow up on the traced calls and the failure to verify the contents and voice on the tape recorded calls constitute a pervasive policy that deprived him of his constitutional rights. Moreover, those same failures were in direct disregard of HPD's own stated policy and procedures with respect to investigating violations of retraining orders.

Plaintiff also argues that the Prosecutors' actions in this case constitute a custom of not properly investigating telephone harassment violations. For example, Plaintiff contends that Akiona began an investigation by issuing a subpoena for trace records to Verizon regarding the calls made to Liang on April 13 and 25, 2004. Akiona also exercised her investigatory authority when she issued a subpoena to T-Mobile regarding the traced Call Number. However, Akiona failed to complete her investigation after it was determined that the traced Call Number belonged to a Todd Evans and not Plaintiff. Plaintiff contends that Shinsato and Hargrove, the prosecutors handling Plaintiff's criminal matters subsequent to Akiona, also failed to continue investigating the traced calls and the possibility that other suspects, besides Plaintiff, made the alleged calls to Liang. Those actions are clear evidence of deliberate indifference supporting liability on behalf of the City.

## STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The moving party bears the initial burden of establishing that there is no genuine issue of material fact.  See MetroPCS, Inc. v. City & County of San Francisco, 400 F.3d 715, 720 (9th Cir. 2005).  There is no genuine issue of material fact if, based on the record as a whole, a rational trier of fact could not find for the non-moving party.  See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  "A material fact is one that may affect the decision, so that the finding of that fact is relevant and necessary to the proceedings." W. Sunview Props., LLC v. Federman, 338 F. Supp. 2d 1106, 1114 (D. Haw. 2004) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

If the moving party meets its burden, the non-moving party must then present evidence that there is a genuine issue of material fact for trial.  In considering a motion for summary judgment, a court must resolve all disputed issues of fact in favor of the non-moving party.  See MetroPCS, 400 F.3d at 720. "[T]he court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods.,

<u>Inc.</u>, 530 U.S. 133, 150 (2000) (citations omitted).  Further,
"[i]n ruling on a motion for summary judgment, the court must
bear in mind the actual quantum and quality of proof necessary to
support liability under the applicable law." <u>W. Sunview</u>, 338 F.
Supp. 2d at 1114 (citation omitted).

### DISCUSSION

**I.**    **Section 1983 Liability**

Section 1983 of Title 42 of the U.S. Code states:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage . . .
> subjects, or causes to be subjected, any citizen
> of the United States . . . to the deprivation of
> any rights, privileges, or immunities secured by
> the Constitution and laws, shall be liable to the
> party injured in an action at law, suit in equity,
> or other proper proceeding for redress . . . .

42 U.S.C. § 1983.  "Section 1983 does not create any substantive
rights; rather it is the vehicle whereby plaintiffs can challenge
actions by governmental officials." <u>Cholla Ready Mix, Inc. v.
Civish</u>, 382 F.3d 969, 978 (9th Cir. 2004) (quoting <u>Henderson v.
City of Simi Valley</u>, 305 F.3d 1052, 1056 (9th Cir. 2002))
(quotations omitted).  To state a § 1983 claim, a "plaintiff must
demonstrate a deprivation of a right secured by the Constitution
or laws of the United States, and that the defendant acted under
color of state law." <u>Kirtley v. Rainey</u>, 326 F.3d 1088, 1092 (9th
Cir. 2003) (citing <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988)).

**A.**    **Probable cause**

Defendants argue that Plaintiff's § 1983 claims fail as

a matter of law on the basis that the HPD Officers had probable cause in the first instance to arrest Plaintiff, on the four separate occasions in question, for violations of the Injunction Order.  Probable cause to arrest exists when "officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe an offense has been or is being committed by the person being arrested." United States v. Lopez, 482 F.3d 1067, 1072 (9th Cir. 2007) (citing Beck v. Ohio, 379 U.S. 89, 91 (1964)).  "Mere suspicion, common rumor, or even strong reason to suspect are not enough." McKenzie v. Lamb, 738 F.2d 1005, 1008 (9th Cir. 1984).  "There must be some objective evidence which would allow a reasonable officer to deduce that a particular individual has committed or is in the process of committing a criminal offense." Id.  Where the facts and circumstances surrounding a person's arrest are disputed, the existence of probable cause is generally a question for the jury in a § 1983 action.  McKenzie, 738 F.2d at 1008.  "[S]ummary judgment is appropriate only if no reasonable jury could find that the officers did or did not have probable cause to arrest." Id.

In the instant case, the facts and circumstances underlying Plaintiff's arrests are not in dispute.  Plaintiff was charged and arrested on four separate occasions for violating Hawaii Revised Statutes § 604-10.5, which prohibits a knowing or

intentional violation of a restraining order or injunction.[5]  In
each instance, an HPD Officer responded to a call concerning a
harassing telephone call in violation of the Injunction Order,
interviewed and took statements of the complaining witness and or
other witnesses, confirmed the existence and validity of the
Injunction prohibiting Plaintiff from contacting Liang, and
recovered tape recordings with respect to certain of the calls
allegedly made by Plaintiff to Liang.

     Under the standard set forth in <u>McKenzie</u>, this Court
finds that there was objective evidence sufficient for the HPD
Officers to reasonably conclude that Plaintiff had violated the
Injunction Order in each instance.  That objective evidence
included (1) the Injunction Order, reviewed by each investigating
and arresting officer to determine its validity and the parties
involved, (2) oral and written statements by Liang, Shea and Date
affirmatively identifying Plaintiff's voice on the telephone
calls, and (3) the tape recordings made by Liang and Shea with
respect to certain of the calls.

     Plaintiff argues that probable cause was lacking
because the HPD Defendants failed to listen to the tapes they
recovered from Liang, and either trace the calls allegedly  made
by Plaintiff or follow-up on the calls traced by Liang and or
Shea.  This Court disagrees.  First, whether the HPD Officers

_____

     [5] Plaintiff was also charges with two charges of criminal
contempt in connection with the April 27 Arrest.  Those charges
do not appear to be a basis for Plaintiff's claims in this case.

listened to the recovered tapes or not does not take away the
fact that there was other objective evidence from which the HPD
Officers could reasonably conclude that Plaintiff violated the
Injunction Order by calling Liang.[6]  That evidence is undisputed.
Moreover, even had the HPD Officers listened to the tape
recordings, there is nothing to suggest that they would have been
able to recognize Plaintiff's voice or that such tape recordings
would have been otherwise exculpatory of Plaintiff's alleged
violations.  Indeed, the fact that Liang voluntarily produced
tape recordings of the alleged calls, if anything, added support
to Liang's contemporaneous oral and written statements that
Plaintiff called her in violation of the Injunction Order.

       Second, the fact that the HPD Officers did not apply
for traces on the calls allegedly made by Plaintiff to Liang
similarly does not dilute the other objective evidence before the
HPD Officers indicating that Plaintiff had violated the
Injunction Order.  In addition, it is questionable whether a
trace would have revealed anything other than, as it did here,
information related to the account holder such as an account
number, name and address.  Such information would not account for
a potential injunction order violator from using someone else's

---

       [6] Plaintiff also contends that the HPD Officers should have
listened to the tapes to verify "content."  To the extent
Plaintiff is contending that the HPD Officers should have
verified the "contents" of the conversation, however, such
"content" is irrelevant as the Injunction Order makes clear that
Plaintiff is prohibited from telephoning Liang at all.

telephone or using a lost or stolen telephone to make the violating call.  Further, even if tracing the call would have potentially revealed a caller other than Plaintiff, once an officer establishes probable cause, there is no constitutional duty to perform an error-free investigation or fully and independently investigate every claim of innocence prior to arrest.  See <u>Baker v. McCollan</u>, 443 U.S. 137, 145-46 (1979). Therefore, this Court finds that even taking Plaintiff's assertions as true and construing them in the light most favorable to him, Plaintiff's arrests were supported by probable cause.

B.  **<u>Absolute Immunity</u>**

In addition to the existence of probable cause for Plaintiff's arrests, the Prosecutors assert they are entitled to absolute immunity regarding their actions in this case.  The absolute immunity of a prosecutor is founded on the same purpose underlying the immunity of judges and grand jurors acting within the scope of their duties – that is, to protect the judicial process.  <u>Milstein v. Cooley</u>, 257 F.3d 1004, 1007 (9th Cir. 2001).  In particular,

> absolute immunity for prosecutors is warranted (1) to allow prosecutors to focus their energies on prosecuting, rather than defending lawsuits; (2) to enable prosecutors to exercise independent judgment in deciding which suits to bring and conducting them in court; (3) to preserve the criminal justice system's function of determining guilt or innocence by ensuring that triers of fact are not denied relevant (although sometimes conflicting) evidence because of prosecutors' fear

> of suit; and (4) to ensure fairness to defendants
> by enabling judges to make rulings in their favor
> without the subconscious knowledge that such
> rulings could subject the prosecutor to liability.

Id. (internal citations omitted).

In analyzing a prosecutor's claim for absolute
immunity, the court looks to the "the nature of the function
performed, not the identity of the actor who performed it."
Kalina v. Fletcher, 522 U.S. 118, 127 (1997) (citation and
internal quotation marks omitted).  Prosecutors are entitled to
absolute immunity "in initiating a prosecution and in presenting
the State's case . . ." Imbler v. Pachtman, 434 U.S. 409, 430
(1976).  Indeed, "it is well established that a prosecutor has
absolute immunity for the decision to prosecute a particular case
. . ." Botello v. Gammick, 413 F.3d 971, 976 (9th Cir. 2005).
When prosecutors perform administrative or investigative
functions, however, only qualified immunity is available.  Id.

In this case, Plaintiff appears to make two principal
arguments that the Prosecutors are not entitled to absolute
immunity, both of which are unavailing.  First, Plaintiff appears
to argue that under Kalina, the Prosecutors are at best only
entitled to qualified (and not absolute) immunity regarding the
filing of the criminal complaints against him.  [Mem. in Opp. at
5-6, 11, 18.]  Plaintiff, however, misreads Kalina.  In Kalina,
absolute immunity was denied to a prosecutor who filed the
equivalent of an affidavit in support of a motion for an arrest
warrant.  Kalina, 522 U.S. at 131.  An information charging

burglary was filed along with the affidavit and motion for an
arrest warrant.  Id. at 121.  The affidavit was filed in
satisfaction of Washington Criminal Rules requiring the arrest
warrant to be supported by a certification or "sworn testimony
establishing the grounds for issuing the warrant."  Id.  The
affidavit summarized the evidence supporting the charge, and the
prosecutor personally vouched for the truth of the facts set
forth in the affidavit under penalty of perjury.  Id.  Based on
the sworn affidavit, the trial court found probable cause and
ordered that an arrest warrant be issued.  Id.

        The Supreme Court noted that its prior decisions made
"clear that [the prosecutor's] activities in connection with the
preparation and filing of two of the three charging documents-the
information and the motion for an arrest warrant-are protected by
absolute immunity."  Id. at 129 (brackets added).  In fact,
drafting the affidavit, selection of the particular facts to
include in the affidavit, determining that the evidence was
sufficiently strong to justify a probable-cause finding, the
decision to file charges, and her presentation of the information
and the motion to the court, each involved the exercise of
professional judgment protected by absolute immunity.  Id. at
130-31.  However, The Supreme Court found that in personally
attesting to the facts set forth in the affidavit, the prosecutor
"performed an act that any competent witness might have
performed."  Id. at 129-30.  "Testifying about facts is the

function of the witness, not of the lawyer." <u>Id.</u> at 130.  "Even

when the person who makes the constitutionally required 'Oath or

affirmation' is a lawyer, the only function that she performs in

giving sworn testimony is that of a witness," and thus is not

entitled to absolute immunity.  <u>Id.</u> at 131.

Plaintiff attempts to analogize the criminal complaints

filed by the Prosecutors in this case with the certified

affidavit filed in <u>Kalina</u>.  An examination of those criminal

complaints, however, reveals that they are more analogous to the

information charging document in <u>Kalina</u>, that the Supreme Court

indicated was entitled to absolute immunity, and not the

affidavit.  The criminal complaints filed in this case are

unsworn, as acknowledged by Plaintiff, and the Prosecutors do not

attest to or otherwise vouch for the truth of the facts set forth

therein.  Moreover, the decisions to file the criminal

complaints, i.e., the decisions to prosecute, are absolutely

protected.  <u>Botello</u>, 413 F.3d at 976.  Accordingly, the

Prosecutors are afforded absolute immunity in connection with

their actions and decision to file the four criminal complaints

against Plaintiff.

Plaintiff also argues that the Prosecutors failed in

their duty to investigate the charges before filing the four

criminal complaints against him.  In particular, Plaintiff

appears to argue that the Prosecutors were acting in an

investigative "function," and therefore not entitled to absolute

immunity, when they purportedly failed to (1) review the tape recordings submitted in evidence by the HPD Officers, (2) consider the information received about the traced calls.

Although Plaintiff correctly asserts that prosecutors acting in an investigative capacity are not entitled to absolute immunity, the Court is not persuaded that such was the case here. Despite Plaintiff's characterization that the Prosecutors' decisions to not listen to the tape recordings in evidence or consider the traced call information, which the Court assumes is true for purposes of this Motion, were "investigative" in nature, it is clear that the Prosecutors' decisions with respect to those matters were not investigatory but instead were "acts undertaken by [the Prosecutors] in preparing for the initiation of judicial proceedings or for trial, and which occur[red] in the course of [their] role as an advocate for the State . . . entitled to the protections of absolute immunity." Kalina, 522 U.S. at 126 (brackets added).  For example, Plaintiff complains heavily about the trace call information subpoenaed and received by Akiona in connection with the April 13 Incident and the April 25 Incident which indicated that Traced Call Number did not belong to him. However, that information was received well after the arrest and the filing of the criminal complaint regarding the Injunction Order violations that occurred on those days.  Akiona, if anything, was exercising her professional judgment and discretion in evaluating such evidence, of which the law affords her

absolute immunity.  Therefore, the Court finds that the
Prosecutors actions in this case were not investigatory but
instead were actions intimately associated with the decision to
prosecute Plaintiff for the alleged violations of the Injunction
Order, and thus protected by absolute immunity.

        C.   **Qualified Immunity**

        The Court also finds that the Prosecutors and HPD
Defendants are entitled to qualified immunity.  Qualified
immunity entitles the defendant not to stand trial or face the
other burdens of litigation.  See Ramirez v. City of Buena Park,
560 F.3d 1012, 1020 (9th Cir. 2009) (citations and quotation
marks omitted).  The qualified immunity defense is analyzed under
a two-step inquiry.  Id.   "However, the Supreme Court recently
held that this two-step inquiry is no longer 'an inflexible
requirement.'" Id. (quoting Pearson v. Callahan, --- U.S. ----,
129 S.Ct. 808, 818 (2009).  It is within the court's "'sound
discretion in deciding which of the two prongs of the qualified
immunity analysis should be addressed first in light of the
circumstances in the particular case at hand.'"  Id.

        Under the first prong, the question is whether the
facts show that the defendant's actions, taken in the light most
favorable to the plaintiff, violated a constitutional right.  Id.
"If no constitutional right would have been violated were the
allegations established, there is no necessity for further
inquiries concerning qualified immunity."  Id. (quoting Saucier

v. Katz, 533 U.S. 194, 201 (2001) (internal quotation marks
omitted).  Under the second prong, the question is whether the
constitutional right was clearly established.  Id.  "The
dispositive inquiry is whether it would be clear to a reasonable
officer that his conduct was unlawful in the situation he
confronted."  Id. (citation and quotation marks omitted).  If the
defendant is mistaken as to what the law requires and such
mistake is reasonable, then the defendant is entitled to the
immunity defense.  Id.

### 1.   The HPD Officers' Actions Were Reasonable

Plaintiff in this case clearly had a Fourth Amendment
right to be free from an unlawful arrest.  However, as discussed
above, the HPD Officers had probable cause for the arrests of
Plaintiff in connection with the violations of the Injunction
Order.  Further, the actions of the HPD Officers in this case
were reasonable under the totality of the circumstances.
Therefore, even if the factual allegations in the Complaint
against the HPD Defendants are proved true, this Court finds that
the HPD Officers did not violate Plaintiff's Fourth Amendment
right when he was arrested on four separate occasions for
violating the Injunction Order.  Accordingly, the HPD Officers
are entitled to qualified immunity.

### 2.   The Prosecutors' Actions Were Reasonable

Similarly, for the reasons set forth above, the Court
finds that the Prosecutors' actions in this case were reasonable

under the totality of the circumstances and did not infringe upon any of Plaintiff's constitutional rights.   In addition to probable cause for the arrests of Plaintiff in the first instance, the Prosecutors evaluation of the evidence and decision to prosecute were well within their lawful discretion and professional judgment.   Accordingly, the Prosecutors are entitled to qualified immunity.

> D.   **Liability of the City**

It is well established that a municipality cannot be held liable pursuant to § 1983 under a theory of respondeat superior liability.   <u>Monell v. Dep't of Social Servs. of City of N.Y.</u>, 436 U.S. 658, 691 (1978) ("a municipality cannot be held liable solely because it employs a tortfeasor-or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory.").   A plaintiff may establish municipal liability by proving that the alleged constitutional violation was committed pursuant to a formal policy or custom that constitutes the standard operating procedure; that an official with "final policy-making authority" committed the constitutional tort; or "that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it."   <u>Gillette v. Delmore</u>, 979 F.2d 1342, 1346-47 (9th Cir. 1992); <u>see</u> <u>Monell</u>, 436 U.S. at 690-91; <u>Sunn v. City & County of Honolulu</u>, 852 F. Supp. 903, 908-09 (D. Haw. 1994) (A municipality can only be held liable for

unconstitutional acts where the acts were  "(1) the direct result
of inadequate police training or supervision; (2) the product of
an officially adopted policy statement, ordinance, regulation, or
decision; or (3) illustrative of a custom which is so permanent
and well settled to constitute a custom or usage with the force
of law.").

        "[T]he word 'policy' generally implies a course
of action consciously chosen from among various alternatives."
Oklahoma City v. Tuttle, 471 U.S. 808, 823 (1985).  The word
custom recognizes situations where the practices of officials are
permanent and well settled.  See Adickes v. S. H. Kress & Co.,
398 U.S. 144, 167-68 (1970).  A plaintiff may not assert a claim
under Section 1983 merely by identifying conduct properly
attributable to the municipality.  Bd. of County Comm'rs v.
Brown, 520 U.S. 397, 404 (1997).  "The plaintiff must also
demonstrate that, through its *deliberate* conduct, the
municipality was the 'moving force' behind the injury alleged.
That is, a plaintiff must show that the municipal action was
taken with the requisite degree of culpability and must
demonstrate a direct causal link between the municipal action and
the deprivation of federal rights."  Id.

        Plaintiff first contends that the City engaged in an
unlawful custom and usage with respect to the HPD Officers.
Plaintiff largely points to the same facts he contends
demonstrated that the HPD Officers lacked probable cause in

arresting him for violations of the Injunction Order.  In particular, Plaintiff asserts that the HPD Officers did not follow their own policies and procedures when they failed to listen to the tape recordings of the calls and failed to trace the alleged calls or follow-up with Liang or Shea on the calls they traced.  Plaintiff argues that the HPD Officers' conduct showed an unwritten policy of failing to properly investigate injunction order violations and that the City acted with deliberate indifference to the need to change that unwritten policy, enforce the existing written policy, and see that the HPD Officers were trained accordingly.

In examination of the policy referred to by Plaintiff, which the Court assumes was the policy in force at the time of the events in question for purposes of this Motion, the Court is not convinced that the HPD Officers did not follow its written procedures in investigating, finding probable cause, and arresting Plaintiff for violations of the Injunction Order as alleged in the Complaint.  [Pltfs.' Opp. Exhs., Exh. 43.] Nothing contained therein is inconsistent with the conduct of the HPD Officers in this case.  Moreover, even without the written policy, the Court, as discussed above, has found that the HPD Officers had probable cause to arrest Plaintiff on four separate occasions and that their actions were in any event reasonable under the totality of the circumstances.  Therefore, the Court finds that the City did not have a policy or custom in force with

respect to the HPD Officers that in any manner violated on Plaintiff's constitutional rights.

Plaintiff next contends that the City engaged in an unlawful custom and usage with respect to the Prosecutors.  As above, Plaintiff complains that the Prosecutors' failure to properly investigate the charges against Plaintiff, i.e., failing to listen to the tape recordings and follow-up on traced call information, before filing the criminal complaints, show an unlawful custom or usage on the part of the City.  Plaintiff asserts that a reasonable jury could find on the evidence submitted thus far that the prosecutors had a custom of not properly investigating telephone harassment violations.

This Court disagrees.  The evidence submitted thus far, as discussed above, leads this Court to the conclusion that there was probable cause to arrest Plaintiff on four separate occasions for violations of the Injunction Order and that the Prosecutors acted reasonably under the totality of the circumstances in filing the subsequent criminal complaints.  More importantly, the law affords the Prosecutors the professional judgment and discretion in their evaluation of evidence and their decision to prosecute, which they exercised in this case.  This Court would be stepping over the bounds of that protection should it find that a custom or policy that relies on such judgment and discretion is unlawful.  Therefore, the Court finds that the County did not have a policy or custom in force with respect to

the Prosecutors that in any manner infringed on Plaintiff's
constitutional rights.

## II.  <u>State Law Claims</u>

In addition to his § 1983 claims, Plaintiff also
alleges state law tort claims against the HPD Officers and the
Prosecutors.  Specifically, Plaintiff alleges claims for false
imprisonment, emotional distress, defamation, gross negligence
and intentional tort.[7]  The HPD Officers argue that, under Hawaii
law, they are entitled to qualified immunity or "conditional
privilege" regarding such claims.[8]  [Mem. in Supp. of HPD Defts.'
Motion at 16 (citing <u>Towse v. State</u>, 64 Haw. 624, 647 P.2d 696
(1982)).]

Under <u>Towse</u>, "non-judicial governmental officials, when
acting in the performance of their public duty enjoy the
protection of what has been termed a qualified or conditional
privilege."  64 Haw. at 631, 647 P.2d at 702.  The privilege,
effectively shields the defendant from liability.  <u>Id.</u> at 632,
647 P.2d at 702.  "[I]n order for an action to lie against an
official acting under a claim of privilege, it is essential that
the injured party allege and prove, to the requisite degree, that
the official had been motivated by malice and not by an otherwise

[7] Plaintiff alleges that the false imprisonment was also in
violation of the Fourth and Fourteenth Amendments.  To the extent
those allegations are brought under § 1983, Defendants are
entitled to summary judgment for such claim as discussed, *supra*.

[8] Plaintiff does not respond to this argument in his
opposition memorandum.

proper purpose."[9]  Id.  Malice is shown when the defendant failed to "act as a reasonable man under the circumstances, with due regard to the strength of his belief, the grounds that he has to support it, and the importance of conveying the information." Id. at 633, 647 P.2d at 703 (citation and quotation marks omitted).

As discussed above, the Court has already found that the actions in this case of the HPD Officers and the Prosecutors were reasonable under the totality of the circumstances.  Under Towse, then, Plaintiff is unable to show that the HPD Officers or the Prosecutors acted with malice or that their conduct was otherwise unreasonable.  Accordingly, the HPD Officers and the Prosecutors are entitled to qualified or conditional privilege with respect to Plaintiff's state law claims.[10]

Finally, the Court notes that Plaintiff's state law claims cannot survive the expiration of the statute of limitations on such claims as explained in its order granting

---

[9] Although the issue of malice is typically a matter for the jury, where, as here, the facts and circumstances underlying the alleged tortious claims are undisputed, summary judgment in appropriate.  Towse, at 633, 647 P.2d at 703.

[10] To the extent Plaintiff is alleging state law claims against the City, the City argues that it is entitled to summary judgment on the basis that if its employees are immune from suit then it is also immune from suit.  [Mem. in Supp. of City Motion at 14 (citing Reed v. City & County of Honolulu, 76 Haw. 219, 227, 873 P.2d 98, 106 (1994)).]  This Court agrees and finds that the City is immune from suit on Plaintiff's state law claims based on the immunity afforded to the HPD Officers and the Prosecutors under the doctrine of qualified or conditional privilege.

Defendants Liang and Shea's Motion for Summary Judgment as to all Claims and Parties, filed on January 30, 2009, filed September 28, 2009, and which the Court incorporates herein by reference.

### CONCLUSION

On the basis of the foregoing, (1) Defendants City and County of Honolulu and Honolulu Police Department's Motion for Summary Judgment, filed on January 30, 2009, (2) Defendants Peter Carlisle, Ryan K. Shinsato, Ululani G. Akiona and Wade H. Hargrove's Motion for Summary Judgment, filed on January 30, 2009, and (3) Defendants Greyson Acisoba, Morgan Hill, Michael Kaya, Maxie Navas, Russell D. Ontiveros, Samuel Valmoja, Shane Wright, Sean Yamashita, Neil Han and Bryan Oato's Motion for Summary Judgment, filed on January 30, 2009 are HEREBY GRANTED.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, September 28, 2009.



_/S/ Leslie E. Kobayashi_
Leslie E. Kobayashi
United States Magistrate Judge

**DANIEL FAAITA V. SUSAN LIANG, ETC., ET AL; CIVIL NO. 07-00601 LEK; ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**